# Negotiated Acquisitions of Companies, Subsidiaries and Divisions

CUMMINGS EX. C

*Corporate Securities Series*

# NEGOTIATED ACQUISITIONS OF COMPANIES, SUBSIDIARIES AND DIVISIONS

*Volume 2*

**Lou R. Kling**
*Member of the New York Bar*

**Eileen T. Nugent**
*Member of the New York Bar*

**2013**
(Date originally published: 1992)

**Law Journal Press**
**120 Broadway**
**New York, New York 10271**
*www.lawcatalog.com*

# 00617
(Rel. 40)

**This title is now available online. All-inclusive annual service pricing for the online only and online/print combination packages includes an entire year of updates. To activate your online access at www.lawjournalpress.com call our Account Sales Team at 877-807-8076.**

Copyright © 1992, 1993, 1994, 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, 2011, 2012, 2013
ALM Media Properties, LLC. All rights reserved.
Duplication without permission is prohibited.
Law Journal Press®, a division of ALM
New York, New York

**VISIT OUR WEB SITE AT**
**www.lawcatalog.com**

**Library of Congress Cataloging-in-Publication Data**
ISBN 978-1-58852-056-2
ISBN 978-1-58852-198-9 (ebook)

Kling, Lou R.
Negotiated acquisitions of companies, subsidiaries and divisions / Lou R. Kling, Eileen T. Nugent.
p. cm. — (Corporate securities series)
Includes index.
1. Consolidation and merger of corporations—United States.
I. Nugent, Eileen T. II. Title. III. Series.
KF1477.K55 1992
346.73'06626—DC20 92-39553
[347.3066626] CIP

## § 11.02 Knowledge Qualifications

Sellers often refuse to make various representations on the grounds that they simply do not know whether they are true or not. One common example of this is the representation that "there is no litigation pending or threatened against the Company." Sellers, quite rightly, point out that they have no way of knowing whether any person is "threatening" litigation. As a result, the representation is often modified to read: "There is no litigation pending or, to the best of Seller's knowledge, threatened against the Company."

Several issues arise in connection with knowledge qualifications made to representations. The first, and most important, is whether a knowledge qualification is appropriate with respect to any particular representation. A second question has to do with *whose* knowledge is relevant if such a qualification is agreed to by the parties. Finally, the exact formulation of the limitation may be significant.

The key fact to realize when discussing knowledge qualifications is that their use or absence allocates risk between the Buyer and the Seller.[1] For example, in the representation set forth above as to the absence of threatened litigation, the Buyer might respond to the Seller's argument by saying, in effect, that it is not a question of whether it is fair to expect the Seller to be aware of threatened litigation, but that, as between the Buyer and the Seller, the risk should be on the Seller. The reason for this risk allocation might be that, as between the two of them, the Seller is more likely to be in a position to know whether there exists a basis for a lawsuit than the Buyer and, thus, should bear the risk of the threatened lawsuit that no one knows about yet. Alternatively, the Buyer (or the Seller, for that matter) might simply take the position that, regardless of which party is in a better position to know of a threatened litigation or the basis therefor, the pricing of the transaction did not take into account the objecting party assuming such risk.[2]

The problem with this latter approach, of course, is that the parties never actually thought about the specific question of who should bear the risk of threatened litigation when they priced the deal. Consequently, it is difficult to come to an objective resolution of when a particular knowledge qualification is appropriate, based on the pricing

[1] This is also true with respect to materiality limitations and baskets, thresholds and caps. See: §§ 11.03 and 15.03 *infra*.

[2] Another way of stating the Buyer's position, a formulation which avoids the problem noted in the text below, is: "This is a great price. If you want it, forget about this knowledge garbage." The Seller has a corresponding argument.

of the transaction.[3] Over time, what has developed in practice is that a few representations have traditionally been qualified by a knowledge limitation, and others have not (while a third category of representations can commonly be found either so limited or "flat"). The purchase price argument is best used when this traditional structure is to be upset. In other words, a party may be successful in arguing that its pricing of the transaction took into account "normal" representations, with a "standard" use of a knowledge qualification. For example, it would be very unusual for a representation as to the absence of pending litigation against the Company to be qualified by the words "to the best of Seller's knowledge."[4] In this case, the Buyer might very well insist on some sort of purchase price adjustment as a *quid pro quo* for the qualification because of the added risk.

It is useful to consider the effect of the use of a knowledge qualification on the three roles[5] played by representations generally in the acquisition process. Insofar as the due diligence function is concerned, it would appear that the Buyer will not learn less about the Seller's business in the course of negotiating a particular representation if it agrees to a knowledge qualification. However, the absence of a knowledge qualification and the resulting liability risk for the Seller may cause the *Seller* to more thoroughly investigate its business, thereby indirectly improving the due diligence investigation of the Buyer. With respect to the second role assigned to the Seller's representations and warranties, allowing the buyer to refuse to consummate the acquisition by reason of the operation of the bringdown condition, the use of knowledge qualification limiting a Seller's representation should not have a significant impact. If a particular representation is not limited by a knowledge qualification and the Seller is not, and does not prior to closing become, aware that the underlying substance of the representation is not true, then the parties will believe that the bringdown condition is satisfied and the transaction will close. The result would be no different if the representation contained the qualification. Conversely, if the Seller is aware at closing that the representation is not true, the parties will realize that the bringdown condition has not been satisfied, regardless of whether the

---

[3] There will be cases where this is not true and, for example, a particular risk is identified by the parties at an early stage and explicitly allocated to one party or the other. One example might be where neither the Buyer nor the Seller has conducted any environmental audit of the Company's business and does not know of any problem, but the parties have agreed that, and have priced the transaction on the basis that, the risk of any environmental problem should be borne by the Seller.

[4] The utility of this limitation may turn on the identity of the persons covered by the qualifier as defined in the acquisition agreement. See text below.

[5] See § 11.01[1] *supra*.

representation contained a knowledge qualification. In either circumstance, then, the presence of a knowledge qualification should not limit or broaden the Buyer's right to refuse to close.

One thing that Buyers have to be careful about is a representation with a knowledge qualification that talks in terms of " Seller's knowledge as of the date of this Agreement." This type of timing formulation, as with non-knowledge qualified representations, effectively defeats the whole purpose of the bringdown.[5.1] The point is that allowing the qualifier to creep into the knowledge qualifier may be as dangerous as qualifying the entire representation.

It is with respect to the Buyer's ability to sue for damages, either in conjunction with terminating the agreement or pursuant to an indemnification right following the closing, that the use of a knowledge limitation makes the biggest difference. If the representation at issue is qualified by a knowledge limitation, the Buyer, in order to recover damages, not only has to show that the underlying representation was false, but that the Seller was aware of it. This is essentially a question of fact and might necessitate a full trial before being resolved. Moreover, to state the obvious, if the judge or jury is not convinced that the Seller actually *knew* of the misrepresentation, the Buyer will not recover any damages, regardless of how serious the misrepresentation was or the cost (including expenses in the event the transaction does not close or damages or liability to a third party, depending on the particular representation, if the transaction does close) to the Buyer.[6] The important lesson is that knowledge qualifications are less important, to both parties, in situations where there are no indemnification rights, and where the likelihood of a significant lawsuit for a simple misrepresentation in the context of a terminated transaction is small, such as the typical acquisition of a public company.

---

[5.1] See § 11.01[3] *supra*.

[6] Buyer's knowledge as to a breach of a warranty learned though its own investigation may affect its ability to collect through the Seller's indemnification even in the absence of a knowledge qualification in the representation. See § 11.01 N.20 *supra*. See, e.g.:

*First Circuit:* Mowbray v. Waste Management Holdings, Inc., 45 F. Supp.2d 132 (D. Mass. 1999); Pegasus Management Co. v. Lyssa, Inc., 995 F. Supp. 29 (D. Mass. 1998).

*Second Circuit:* Rogath v. E.R. Siebenmann, 129 F.3d 261 (2d Cir. 1997); Promuto v. Waste Management, Inc., 44 F. Supp.2d 628 (S.D.N.Y. 1999).

*Third Circuit:* Giuffrida v. American Family Brands, Inc., 1998 U.S. Dist. LEXIS 5588 (E.D. Pa. April 22, 1998).

*Seventh Circuit:* Middleby Corp. v. Hussman Corp., 1992 WL 220922 (N.D. Ill. Aug. 27, 1992).

*Eleventh Circuit:* Southern Broadcast Group, LLC v. GEM Broadcasting, Inc., 145 F. Supp.2d 1316 (M.D. Fla. 2001).

**State Courts:**

*California:* Kazerouni v. De Satnick, 228 Cal. App.3d 871, 279 Cal. Rptr. 74 (1991).

*Indiana:* Shambaugh v. Lindsay, 445 N.E.2d 124 (Ind. App. 1983).

Case No. 1:12-cv-02547-RM-MEH Document 247-3 filed 04/15/14 USDC Colorado pg 7 of 8



A second major concern which arises in those cases where a knowledge qualification is used is the issue of *whose* knowledge is relevant for the purposes of the limitation. There are a number of different possibilities, depending on the particular transaction. If a parent company is selling a division or subsidiary, the knowledge can be that of the parent, some or all of its officers or the subsidiary/division or some or all of its officers. If an entire company, private or public, is being sold, the obvious choices would be the company itself or some or all of its officers. In addition there is no reason in any given case why any single employee or group of employees could not be included, and the appropriate entity or group of persons will vary from transaction to transaction. The Buyer wants the group whose knowledge is referred to in the qualification to the representations tobe as large as possible, and to make sure that it includes the people who would be the most likely to in fact have knowledge about the accuracy of the representations in question.[7] Sellers generally do not want the knowledge of an entire corporate entity and all of its employees to be the relevant body. While it might be possible to argue that knowledge of a "company" would not include that of low-level employees, and that only the knowledge of officers should be attributed to the corporate entity, this is by no means clear absent express language to this effect.[8]

Buyers and Sellers of subsidiaries or divisions face an interesting question as to the inclusion of management of the business being sold in the group whose knowledge is relevant, particularly if they are going to remain with the Buyer. On the one hand, they are the logical people to actually have the knowledge about the business in general, and any given representation in particular, and so it would make sense for the Buyer to want to include them in the group. On the other hand, will these people be willing to admit to the Buyer afterwards that they knew of the misrepresentation that had been made, in a sense by them, to their new employer? Sellers, for their part, will worry that the Buyer will pressure the persons who are now its employees to determine with hindsight that in fact, they did know of the misrepresentation. For this reason Sellers of subsidiaries often try to have the qualification linked to the knowledge of officers (or a few specified officers) of the parent entity. Buyers generally insist, however, on the inclusion of the important management people of the

---

[7] On occasion the Buyer will request that the Seller make a representation as to the group specified being the appropriate one.

[8] This highlights the difficult question as to whether a Buyer is better served by negotiating the identity of a specific "knowledge group" or merely being silent.

business being sold.[9] In any event, in a sale of stock transaction, a representation being subject to the knowledge of the selling stockholders, rather than management or the Company, will generally render it useless.

The third question that comes up with respect to a knowledge qualification is the scope of the investigation that has to be performed, if any. Again, there is a whole spectrum of possibilities ranging from a statement that "knowledge" means "actual knowledge without any inquiry" to a standard of "knowledge after reasonable investigation." The Buyer's and the Seller's respective preferences on this issue are obvious.

Often, no reference to any investigation or inquiry is made, and the qualification will be simply a reference to "the knowledge of" the persons specified. The issue is whether, in this situation, a court would hold that the Seller (or any party whose knowledge is referred to in the agreement) had a duty to conduct some sort of inquiry or investigation. The question is essentially one of contractual interpretation and presumably will vary greatly in interpretation from jurisdiction to jurisdiction. For example, if there is such a specific duty spelled out elsewhere in the acquisition agreement, a court might be less likely to infer such a duty where the agreement is silent.

*(Text continued on page 11-21)*

---

[9] See § 20.04 Ns. 5-8 *infra*, and accompanying text, for a discussion of some of the intricacies that can arise with respect to indemnification provisions and knowledge of misrepresentations by management members of an LBO acquiror group.