# Anatomy of a Merger:

## Strategies and Techniques for Negotiating Corporate Acquisitions

by James C. Freund

Copyright © 1975, Law Journal Press

Reprinted 2004

**Library of Congress Cataloging-in-Publication Data**

Freund, James C. 1934-
Anatomy of a Merger.

Includes Index.
1. Consolidation and merger of corporations—United States. I. Title.
KF1477.F7 346'73'0662 75-5611

ıat, instead of negotiating this
sentation, you will simply put
ıage into the condition section.
fication, you should hint at the
ze of which will be determined
s."[26]

ɔ be precise grammatically in
t is one thing for the seller to
material breach of any agree-
ı say "there has been no breach
ɛ former case, the discovery of
ɔntract could lead to dire con-
:hough only major agreements
each would present problems.
ouble up and ask for "no ma-
ement."

f materiality may mean, at the
:he situation. I remember well
ears ago in which I was both
eable merger in one room and
ition of a private company that
rance company we represented
ıt, if it were called upon to pay
g, *that* might constitute a ma-
her party an out. I raised the
asked, "What is your largest
that it involved certain atomic
could you suffer?," queried the
l this for a moment, and then
neighborhood of $10,000,000.
ıat simply would not be ma-
numbers in that deal, he was
I joined the other negotiation,
ı vociferous fight over an addi-

ı, see Chapter 14, p. 517.



tional $5,000 of salary for seller's president. To *him,* it was extremely material; and I can't say that I disagree.

### 7.3.2. A Little Knowledge is a Dangerous Thing

Turning now to the knowledge caveat, it is obvious that the seller would prefer every one of his representations to be qualified "to the best of his knowledge"—the theory being that, although he would still be on the hook for items he knew about but failed to disclose, he would escape liability for undisclosed matters concerning which he had no actual knowledge. For example, if seller's prior management had given a mortgage on certain corporate property, but for some reason the instrument did not appear in the corporate records and the mortgagee had never recorded the lien, seller would not be liable if he had represented that, to his knowledge, there were no such mortgages. Without the knowledge caveat, he would be stuck.

From the viewpoint of purchaser's attorney, I think there is a common sense rule to be followed in this type of situation: the only time that you should voluntarily accept a knowledge caveat from seller is in a situation where, if seller does not in fact possess the information, he should not be required to stand behind the representation. The distinction can be seen in the usual litigation representation, where seller is asked to describe both pending and threatened lawsuits.[27] The pending portion is almost always unqualified, but the seller is certainly entitled to a knowledge caveat with respect to threats; the fact that the potential plaintiff has been boasting of his litigious intentions at the neighborhood tavern shouldn't matter a whit. Another example involves the sometime representation that there is no event or condition pertaining to the business or assets of seller that may materially adversely affect such business or assets; the best seller can really say is that he doesn't *know* of any problems along these lines.

Or take, for instance, the representation that the seller's use of a particular trade name does not violate the rights of any third

27. See Section 7.4.7.

Case No. 1:12-cv-02547-RM-MEH Document 247-4 filed 04/15/14 USDC Colorado pg 4 of 4



party. Now, assuming that seller has been using this name for a good while, and assuming that he is not aware of any other company using the name, and assuming that no third party has ever made any claim of violation (i.e., brought the matter to seller's knowledge), and assuming that the trade name is not *that* vital to the seller's business, it would not be inappropriate to accept a knowledge caveat from the seller in that situation.

On the other hand, in the usual case the purchaser is simply looking for a guarantee, and it becomes immaterial whether the seller actually has or hasn't the requisite knowledge. In these situations, the purchaser's attorney should refuse to permit the knowledge caveat to create ambiguity in the legal relations existing between the parties. For example, the purchaser should never allow the seller's representation that his accounts receivable are current and collectible[28] to be made to the best of his knowledge. The purchaser wants to be indemnified if those receivables turn out to be bad. The seller might well have no idea that the receivables will ultimately be worthless, and yet the risk of loss should fall upon the seller in that case. In more complex areas, such as unknown liabilities, unless there is a particular rationale to the contrary, I take the view that generally the seller (who is presumed to know his business better than purchaser) should bear the risk—and thus the purchaser should not agree to a knowledge caveat.[29]

## 7.4. SPECIFIC REPRESENTATIONS OF THE SELLER

We are now in a position to examine some of the more common representations and warranties required of the seller in the acquisition agreement. For purposes of analysis, I have attempted to organize these into broad general categories, a format not necessarily reflected in the typical agreement.

28. See Section 7.4.4.
29. See Section 8.4.2. for a somewhat more generous reaction to requests for knowledge caveats in connection with attorneys' opinions.