IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 12-cv-02547-RM-MEH

THE PIONEER CENTRES HOLDING COMPANY EMPLOYEE STOCK OWNERSHIP
PLAN AND TRUST AND ITS TRUSTEES, MATTHEW BREWER, ROBERT JENSEN AND
SUSAN DUKES,

      Plaintiffs,

      v.

ALERUS FINANCIAL, N.A., and
BERENBAUM WEINSHIENK, P.C.,

      Defendants,

_____

ALERUS FINANCIAL, N.A.,

      Third-Party Plaintiff and Counterclaim Plaintiff,

      v.

MATTHEW BREWER, ROBERT JENSEN, SUSAN DUKES,
PIONEER CENTRES HOLDING COMPANY, and RICHARD EASON,

      Third-Party Defendants and Counterclaim Defendants.

_____

ORDER ON:
(1) THIRD-PARTY DEFENDANTS MATHEW BREWER, ROBERT JENSEN,
SUSAN DUKES AND PIONEER CENTRES HOLDING COMPANY'S
AMENDED MOTION TO DISMISS ALERUS FINANCIAL, N.A.'S FIRST AND
THIRD CLAIMS FOR RELIEF (ECF NO. 160); AND
(2) THIRD-PARTY DEFENDANT EASON'S
AMENDED MOTION TO DISMISS (ECF NO. 159)

_____

      This matter is before the Court on (1) Third-Party Defendants Matthew Brewer, Robert

Jensen, Susan Dukes and Pioneer Centres Holding Company's Amended Motion to Dismiss

Alerus Financial, N.A.'s First and Third Claims for Relief (ECF No. 160); and (2) Third-Party

Defendant Eason's Amended Motion to Dismiss (ECF No. 159) (collectively, the "Motions"),

seeking, among other things, dismissal of Defendant/Counterclaim Plaintiff/Third-Party Plaintiff

Alerus Financial, N.A.'s Count I for Common Law Indemnification and Contribution.  Upon

consideration of the Motions, the Court's file, the applicable law and statutes, and as stated by

the Court after hearing oral argument, the Motions are GRANTED as to Count I.[1]

## I. BACKGROUND

This matter arises from a failed stock transaction which would have resulted in The

Pioneer Centres Holding Company Employee Stock Ownership Plan and Trust (the "ESOP")

owning 100% of the stock of Pioneer Centres Holding Company ("Pioneer").  At the time of the

proposed transaction, the ESOP owned approximately 37% of Pioneer's stock and Matthew

Brewer owned the remaining 63%.  Under the proposed transaction, Pioneer would redeem the

majority of Brewer's stock and the ESOP would purchase the rest of Brewer's stock, resulting in

the ESOP being the sole owner of all outstanding shares of Pioneer's stock.  Defendant Alerus

Financial, N.A. was retained as the independent transactional trustee to consummate the stock

transaction.  The transaction, however, was never consummated.  According to the ESOP, as

against Alerus, the transaction failed because Alerus breached its fiduciary duties by, among

other things, failing to adequately assess and investigate the proposed acquisition, demanding

unreasonable representations and warranties from Brewer, and failing to attempt to negotiate

acceptable terms.  Alerus' demands were allegedly unreasonable, made only to protect Alerus,

and not in the best interests of the ESOP.

---

[1] The Court recognizes that its Order finding no causation of damages, even assuming there was a breach by Alerus (ECF No. 342), may render the contribution/indemnification issue moot.  Nonetheless, whether Alerus breached its fiduciary duty remains at issue in its claim for indemnification against Pioneer; therefore, in an abundance of caution, the Court addresses the matter in the event it may be relevant to any outstanding issues that remain.

Due to the failed transaction, the ESOP, through its trustees, Brewer, Robert Jensen, and Susan Dukes (collectively, the "Trustees"), has filed this action against: 1) Alerus for breach of fiduciary duty; and 2) Defendant Berenbaum Weinsheink, P.C. ("Berenbaum"), for negligence/legal malpractice in the performance of certain legal services in connection with the transaction.  By the time suit was filed, Alerus had apparently relinquished its role as the independent transactional trustee.

In response to the ESOP's complaint, Alerus has filed counterclaims and third-party claims against certain alleged fiduciaries of the ESOP, namely, the Trustees (as Counterclaim Defendants), Third-Party Defendant Pioneer (the "Plan Administrator" of the ESOP), and Third-Party Defendant Richard Eason (Brewer's attorney and an alleged member of the ESOP's "Plan Committee") (collectively, the "Cofiduciaries").[2]  Alerus brings three claims: contribution and indemnification against the Cofiduciaries; contractual indemnification against Pioneer; and for an accounting against the Trustees and Pioneer.

The Cofiduciaries have filed the Motions seeking dismissal of two of Alerus' claims: the first claim for contribution and indemnification; and the third claim for an accounting.  In its claim for contribution/indemnification, Alerus alleges the Cofiduciaries were "more at fault" than Alerus.  On February 13 and 19, 2015, the Court held a hearing on motions pending in this case, including the Cofiduciaries' Motions.  On February 19, 2015, after argument, the Court orally granted the Cofiduciaries' Motions (ECF Nos. 159 & 160) on the basis that there is no right to contribution or indemnification,[3] but advised the parties this written order would follow.

---

[2] By this reference, the Court is not making, and does not make, any findings as to whether the "Cofiduciaries" were, in fact, fiduciaries as Alerus alleges.

[3] During the hearing, the Court also orally granted the Trustees and Pioneer's Motion as to Count III (Accounting) for failure to state a claim.

## II.  LEGAL STANDARD

Pursuant to Rule 12(b)(6), a complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Id*. at 555 (internal citations and brackets omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*.  "[A] plaintiff must 'nudge [ ] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (internal citation and quotation omitted; *italics* in original). For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. *Morse v. Regents of the Univ. of Colo*., 154 F.3d 1124, 1126-27 (10th Cir. 1998); *Seamons v. Snow*, 84 F.3d 1226, 1231-32 (10th Cir. 1996).  However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions' . . . ." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (brackets in original).

4

## III.  ANALYSIS

In this case, assuming, *arguendo*, the Cofiduciaries were fiduciaries of the ESOP at all relevant times, the legal question before the Court is whether there is a federal common law right of indemnification and contribution under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*. ("ERISA") based on the allegations in this case.  The United States Court of Appeals for the Tenth Circuit has not decided the issue, and the other Circuit Courts which have decided the issue are split.  The Eighth and Ninth Circuits have found no right of contribution/indemnification, while the Second and Seventh Circuits have found such a right exists.  *Travelers Cas. & Surety Co. of Amer. v. IADA Servs., Inc.*, 497 F.3d 862 (8th Cir. 2007) (no right); *Kim v. Fujikawa*, 871 F.2d 1427 (9th Cir. 1989) (no right); *Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12 (2nd Cir. 1991) (right exists); *Free v. Briody*, 732 F.2d 1331 (7th Cir. 1984) (right exists).  Within the district courts of the Tenth Circuit, the courts are split 2 to 1 in favor of finding such a right.  Alerus contends this Court should follow the reasoning of its sister district court in *Via Christi Regional Med. Cen. v. Blue Cross & Blue Shield of Kan.*, Nos. 04-1253-WEB, 04-1339-WEB, 2006 WL 3469544 (D. Kan. Nov. 30, 2006), while the Cofiduciaries assert the better reasoning may be found in the decisions of the Eighth and Ninth Circuits.  The Court has examined the various decisions on the issue and, after careful consideration, finds there is no federal common law right to contribution or indemnification (collectively, "contribution")[4] in this case.  In order to reach this conclusion, the law must be examined in light of Alerus' claim.

---

[4] Contribution and indemnification are distinct legal rights, but the parties did not separate the concepts. Accordingly, the Court will also consider the two concepts as one.

### A.    Alerus' Contribution Claim

In order to place Alerus' contribution claim in context, the ESOP's claim against Alerus

bears examination.  Specifically, the ESOP alleges Alerus breached its fiduciary duty under 29

U.S.C. § 1109, which provides:

> (a)     Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good *to such plan any losses* to the plan resulting from each such breach, and to restore *to such plan any profits* of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.  A fiduciary may also be removed for a violation of section 1111 of this title.

29 U.S.C. § 1109(a) (italics added).

Alerus' claim seeks contribution with respect to all of its alleged breaches.  (ECF No. 64,

Third-Party Complaint and Counterclaims, ¶49.)  Alerus alleges that if it is liable for breach of

fiduciary duty, which it denies, then the Trustees knowingly took advantage of that breach, to the

detriment of the ESOP.  (ECF No. 64, ¶48.)  And, if Alerus breached its fiduciary duty, the

Cofiduciaries took no action to remedy such breaches, or failed to properly monitor Alerus so

that they could have remedied those breaches.  (ECF No. 64, ¶¶54-56, 60-62.)  As a result of

their actions or inactions, Alerus alleges the Cofiduciaries breached their fiduciary duties to the

ESOP.

The claim that the Cofiduciaries are liable in connection with the alleged wrongful

conduct of Alerus is grounded not on § 1109, but, rather, on  § 1105(a)(2) and (a)(3).   Those

sections provide:

> In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> ***

6

(2) if, by his failure to comply with section 1104 (a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach

29 U.S.C. § 1105(a).

While these provisions may provide a basis for extending liability to the plan to present or former fiduciaries beyond Alerus, it does not provide for liability of one fiduciary to another. Nonetheless, Alerus argues that if it is found liable, the Cofiduciaries are substantially more at fault and it is entitled to indemnification. In addition, Alerus argues that if it is found jointly liable to the ESOP along with the Cofiduciaries, it is entitled to contribution if it is required to pay more than its proportionate share of liability. (ECF No. 64, ¶¶72, 73.) But, the ability to recover indemnity or contribution is not a part of ERISA. For that, Alerus depends upon the recognition of such a right as part of the federal common law under ERISA.

### B.     Factors for Consideration

#### 1.     *Russell's* Caution

In *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985), in assessing an argument of whether a remedy may be implied where not expressly authorized under ERISA, the Supreme Court stated that "'unless…congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist.'" *Id*. at 145 (quoting *Northwest Airlines, Inc. v. Transport Workers*, 451 U.S. 77, 94 (1981)). "'The federal judiciary will not engraft a remedy on a statute, no matter how salutary, that Congress did not intend to provide.'" *Id*. (quoting *California v. Sierra Club*, 451 U.S. 287, 297 (1981)). The Supreme Court explicitly stated:

> The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted…provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.  The assumption of inadvertent omission is rendered especially suspect upon close consideration of ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a "comprehensive and reticulated statute." *Nachman Corp. v. Pension Benefit Guaranty Corp.,* 446 U.S. 359, 361, 100 S. Ct. 1723, 1726, 64 L. Ed. 2d 354 (1980).
>
> ***
>
> We are reluctant to tamper with an enforcement scheme crafted with such evident care as the one in ERISA.  As we stated in *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19, 100 S. Ct. 242, 246, 62 L. Ed. 2d 146 (1979): "[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."

*Id*. at 146-147 (brackets and italics in original).

### 2.      The Four-Part *Cort* Test and Congressional Intent

In *Cort v. Ash*, 422 U.S. 66 (1975), the Supreme Court set forth a four-part test to decide whether a remedy should be implied in a federal statute.  That four-part inquiry consists of:

> First, is the plaintiff one of the class for whose especial benefit the statute was enacted…— that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?…Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?...And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Id*. at 78 (internal quotation marks and citations omitted).  The Supreme Court in *Russell* addressed the four-part test, as raised by the respondent, but found Congress did not intend for the judiciary to imply the cause of action claimed.  *Via Christi*, 2006 WL 3469544, at *16, relied on by Alerus, also applied the four-part test, while *Chemung,* 939 F.2d at 15, another case finding a right of contribution, found the test inappropriate.

Since *Cort* was decided, the Supreme Court has on more than one occasion resolved the issue of whether there is an implied right of action.  Such decisions have clarified that the test is a single inquiry: "whether Congress intended to create, either expressly or by implication, a private cause of action," and the first three factors are "ones traditionally relied upon in determining legislative intent."  *Touche Ross & Co. v. Redingt*on, 442 U.S. 560, 575-76 (1979); *Kaw Nation v. Springer*, 341 F.3d 1186, 1189 (10th Cir. 2003) (recognizing the "modern test" consists of a single inquiry – that of Congressional intent).

In this case, Alerus' argument is not that there is an implied right of contribution under ERISA but, rather, that Congress intended for the federal courts to develop a federal common law of ERISA and part of that development should include the right to contribution.  Although the arguments are in some ways distinct, the requested result is the same – a finding that a right of contribution exists under ERISA where no such right is stated.  And, in order to make that determination, the inquiry is still one of Congressional intent, and the *Cort* factors may assist in that determination.

First, is the plaintiff one of the class for whose especial benefit the statute was enacted – does the statute create a federal right in favor of the plaintiff?  The Court finds the statute does not.  Here, Alerus relies on the liability of a cofiduciary under § 1105(a)(2) and (3) as the bases for its assertion that contribution should be afforded.  There is no indication in the statutory scheme, however, that a former fiduciary may assert an action against a cofiduciary for liability arising from violations of such provisions.  *See* 29 U.S.C. § 1132 (identifying "persons empowered to bring a civil action" as a participant, beneficiary, fiduciary, Secretary of Labor, a State, and/or an employer, depending on the violation at issue).  Instead, those provisions are designed to benefit the *plan*.

Some courts have, however, looked not to the statute on which the "joint and several" liability is based, but to ERISA as a whole and whom it was intended to protect or benefit.  Here, Alerus argues that ERISA was also enacted to protect the interests of fiduciaries by, for example, allowing all fiduciaries to be sued in the same forum and generally not holding a fiduciary liable for the fault of other fiduciaries.  The Court finds otherwise.  As recognized in *Via Christi*, upon which Alerus contends the Court should follow, "ERISA's primary purpose is to protect plan beneficiaries rather than fiduciaries," and this factor generally weighs against recognizing a right of contribution.  *Via Christi*, 2006 WL 3469544, at *16.  Indeed, the Supreme Court has stated "ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans."  *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 137 (1990) (internal quotation marks and citation omitted).  Contrary to Alerus' contention, the factors it cites serve to benefit the plan's participants and beneficiaries.  If a fiduciary happens to also benefit from ERISA's provisions allowing a plan's participant to sue all fiduciaries, and in one forum, such benefits are incidental.  In summary, the first factor supports the conclusion that Congress did not intend to afford a former fiduciary – here, Alerus – the right to contribution.

Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?  The answer to this question is "yes" – "[t]he six carefully integrated civil enforcement provisions found in § 502(a) [29 U.S.C. § 1132(a)] of the statute as finally enacted…provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly."  *Russell*, 473 U.S. at 146 (italics in original); *see also Ingersoll-Rand Co.*, 498 U.S. at 137 (Recognizing ERISA's "carefully integrated civil enforcement scheme that is one of the essential tools for accomplishing the stated purposes of ERISA.") (internal quotation marks and citation omitted).  This "carefully integrated

scheme" provides rights and remedies, but only for certain persons, and only for certain remedies. Congress specifically identified who may sue, and whom may be sued, and the available remedies. While a former fiduciary may be sued, it may not sue. Thus, the language and structure of ERISA is devoid of any inference that Congress intended to create a right to contribution on behalf of a former fiduciary.

The third *Cort* factor asks is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? For the reasons stated above, the Court finds it is not.

Finally, the fourth *Cort* factor asks if the cause of action is one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? The Court agrees with the *Via Christi* court that this factor "could be said to weigh in favor of a right to contribution, because Congress intended ERISA to pre-empt state laws and to make a uniform set of federal rules to govern rights and responsibilities relating to ERISA plans." *Via Christi*, 2006 WL 3469544, at *17. Nonetheless, such factor can not and does not weigh against the Court's finding of no legislative intent to afford the remedy which Alerus seeks.

### 3.    Other "Factors"

Alerus raises a number of other arguments as to why a cofiduciary should be afforded the remedy of contribution. The Court is not persuaded.

First, Alerus contends that it would be fairer and more equitable to allow contribution where two or more persons are liable to the same plaintiff for the same injury and one of the joint tortfeasors has paid more than his fair share of the common liability. Alerus gives an example of two co-trustees who make an imprudent investment but the first trustee wins the race to the

courthouse, thereby immunizing the first trustee from liability.  Alerus' contention, however, does not withstand scrutiny as the second trustee[5] – and others – may also file suit against the first trustee; therefore, the first trustee is not immune from liability.  *See* 29 U.S.C. 1132(a)(2) & (3).  Such suit, however, is for the benefit of the plan's participants and beneficiaries, not a fiduciary.  *See id.*

Next, Alerus asks this Court to follow the *Via Christi* court, but the Court declines to do so.[6]  In *Via Christi*, a plan beneficiary (along with an assignee) sued Blue Cross and Blue Shield of Kansas, Inc. ("BCBS") under §1109.  BCBS then filed a third-party complaint under 29 U.S.C. § 1132(a)(3) against an alleged cofiduciary, asserting third-party claims for common law ERISA indemnification and contributions, and for breach of fiduciary duty under § 1109.  In concluding that contribution should be afforded, the *Via Christi* court found that the allocation of responsibility among breaching fiduciaries was a secondary concern of Congress and, therefore, did not warrant an inference that Congress rejected this traditional remedy; and relied on § 1109's allowance of  "such other equitable or remedial relief as the court may deem appropriate" against a fiduciary.  *Via Christi*, 2006 WL 3469544, at *17.   This Court, however, finds to the contrary.

In this case, Alerus' claims against the Cofiduciaries are based on liability under § 1105, which does not contain the language relied on by the *Via Christi* court.  In addition, when § 1109 is read as a whole, the relief to be afforded is to the plan, not to a fiduciary.[7]  *Russell*, 473 U.S. at

---

[5] Assuming the second trustee is still a fiduciary.
[6] As noted above, while the Court agrees with some of the *Via Christi* court's findings, it does not agree as to others.
[7] The Court finds *Emmons v. Equitable Life Assur. Society of the U.S.*, 799 F. Supp. 1123 (D.N.M. 1992) similarly unpersuasive.  The *Emmons* court relied, in part, on § 1132(a)(3)(B) to allow one fiduciary to file a cross claim against another fiduciary for indemnification.  That section allows a fiduciary "to obtain any other appropriate equitable relief…to redress such violations," *i.e.,* violations of ERISA or the plan.  In this case, Alerus is no longer a fiduciary and, therefore, lacks standing to sue under this provision.  In addition, a fiduciary seeking contribution/indemnification from another fiduciary is not seeking to redress violations of ERISA or the plan, but,

141-142; *Travelers*, 497 F.3d at 866.  Thus, even if Alerus is still a fiduciary and has standing to sue the Cofiduciaries, any recovery afforded under § 1132(a)(2) or (a)(3) would be for the benefit of the plan.  Further, this Court respectfully disagrees that Congress was silent on the issue of whether a fiduciary may receive relief.  Congress specifically addressed when a breaching fiduciary may obtain relief – under 29 U.S.C. § 1110, which allows indemnification, but only under limited circumstances.  *See* 29 U.S.C. § 1110; 29 C.F.R. §2509.75-4 (Department of Labor's interpretive bulletin relating to indemnification of fiduciaries, which states that indemnification agreements "which merely permit another party to satisfy any liability incurred by the fiduciary in the same manner as insurance purchased under [§ 1110(b)(3)]" are not void.); *Travelers*, 497 F.3d at 866 (recognizing §1110 allows the fiduciary, and others, to limit a fiduciary's exposure by purchasing insurance to cover its liability); H.R. Conf. Rep. No. 1280 (1974), U.S. Code Cong. & Admin. News 1974, 5038, 5101 ("[A] fiduciary may purchase insurance to cover his own liability.")  And finally, as previously stated, Congress did address when a fiduciary – and which fiduciary – may sue, as ERISA specifically allows a fiduciary to file an action against another fiduciary.  In this case, if Alerus was a fiduciary at the time suit was filed, it could have filed a claim against the Cofiduciaries for their alleged breach of duties, seeking recovery on behalf of the ESOP.  Accordingly, the Court finds no legislative intent that the courts should create such a remedy.

In addition to *Via Christi*, Alerus also relies on *Chemung*, which concluded there can be a cause of action for contribution or indemnification under ERISA.  The Court, however, respectfully finds the better reasoning is found in *Chemung's* dissent, as did the Eighth Circuit in *Travelers,* 497 F.3d at 866:

---

rather, seeking redress for itself.  Thus, § 1132(a)(3)(B) may not be relied upon as evidence that a right of contribution may be crafted on behalf of a fiduciary, much less a former fiduciary.

It seems clear that Congress was aware that the issue of fiduciary indemnification and contribution was bound to arise under ERISA. Indeed, a section of the statute delineates the circumstances in which a co-fiduciary may be liable for another fiduciary's breach of fiduciary responsibility. *See* 29 U.S.C. § 1105 (1988). Moreover, it is equally apparent that Congress was conscious that the general principles of trust law, upon which ERISA is based, *see Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S. Ct. 948, 953–54, 103 L. Ed. 2d 80 (1989), would allow a breaching fiduciary to obtain indemnification and contribution from other wrongdoers. *See* Restatement (second) of Trusts § 258 (1959). Despite its obvious awareness of both the problem at hand and its potential solution, Congress, in crafting ERISA's "interlocking, interrelated and interdependent remedial scheme," *see Russell*, 473 U.S. at 146, 105 S. Ct. at 3092, failed to provide remedies in favor of breaching fiduciaries. Essentially, Congress' omission of all references to the allocation of costs among fiduciaries for joint liabilities demonstrates its rejection of the scheme of contribution and indemnification adopted by the majority. Simply stated, if Congress had intended to include a right of action for contribution and indemnification it would have done so.

*Chemung*, 939 F.2d at 19 (Altimari, C.J., *dissenting*).

Alerus also argues that Congress intended the courts to develop a body of federal substantive law, and when fashioning the federal common law of ERISA, courts should look at the common law of trusts. The Court recognizes that the Supreme Court has held that "courts are to develop a 'federal common law of rights and obligations under ERISA-regulated plans.'" *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 (1987)). And, it also recognizes that "ERISA abounds with the language and terminology of trust law." *Firestone*, 489 U.S. at 110. And, further, that under the common law of trusts, there is a right of contribution in certain circumstances. Restatement (Third) of Trusts, § 102. The fact that a right, or remedy, may exist under the common law of trusts, however, does not automatically mean such right or remedy should be adopted as part of ERISA. Were it so, Congress could have so stated, but did not. Accordingly, finding no legislative intent that the courts should create such a remedy, the Court declines to do so.

## IV.  CONCLUSION

Alerus contends that the federal common law of ERISA grants a breaching fiduciary the right to indemnification and contribution against a cofiduciary who has also breached his fiduciary duties "in the appropriate case."  (ECF No. 64, ¶67.)  The Court finds this is not the appropriate case.  It is therefore **ORDERED**

(1)     That Third-Party Defendants Matthew Brewer, Robert Jensen, Susan Dukes and Pioneer Centres Holding Company's Amended Motion to Dismiss Alerus Financial, N.A.'s First and Third Claims for Relief (ECF No. 160) as to Count I is **GRANTED** as stated herein;

(2)     That Third-Party Defendant Eason's Amended Motion to Dismiss (ECF No. 159) as to Count I is **GRANTED** as stated herein;

(3)     That Count I of Third-Party Plaintiff/Counterclaim Plaintiff Alerus Financial, N.A.'s Third-Party Complaint and Counterclaims is dismissed with prejudice; and

(4)     That the only claim remaining for resolution is Third-Party Plaintiff Alerus Financial, N.A.'s Count II for Contractual Indemnification against Third-Party Defendant Pioneer Centres Holding Company.

DATED this 1st day of May, 2015.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge